FILED
CLERK, U.S. DISTRICT COURT

5/21/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 8:24-cr-00059-DOC |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2113(a): Bank Robbery; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| MARK MENG, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[18 U.S.C. § 1343]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.  Defendant MARK MENG resided in or around Irvine, California, in the Central District of California.

2.  Defendant MENG controlled:

   a.  a U.S. Bank account in the name of Alton Global Holdings, Inc., with an account number ending in 5340 (the "U.S. Bank 5340 account");

        b.    a U.S. Bank account in defendant MENG's name, with an account number ending in 5324 (the "U.S. Bank 5324 account"); and

        c.    a Bank of America account, in the name of Alton Global Holdings, Inc., with an account number ending in 0649 (the "BofA 0649 account").

3.    D.V. ("Violin Shop 1") was a violin shop located in San Rafael, California.

4.    M.R.W. ("Violin Shop 2") was a violin shop located in Costa Mesa, California.

5.    C.H. ("Violin Shop 3") was a violin shop located in Upper Falls, Massachusetts.

6.    B.V. ("Violin Shop 4") was a violin shop located in Alexandria, Virginia.

7.    R.C.V. ("Violin Shop 5") was a violin shop located in Los Angeles, California.

8.    Violin Shop 5 controlled a Chase Bank account ending in 7866.

    B.    <u>THE SCHEME TO DEFRAUD</u>

9.    Beginning no later than in or around August 2020, and continuing until at least in or around April 2023, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant MENG, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud Violin Shops 1, 2, 3, 4, and 5, and others, as to material matters, and to obtain money and property from Violin Shops 1, 2, 3, 4, and 5, and others, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10.    The scheme to defraud operated, in substance, as follows:

      a.   Defendant MENG would reach out to violin shops across the country to express interest in receiving certain violins for a trial period, under the false pretense that he would be testing the violins to determine if he wished to purchase them.  Defendant MENG gained the trust of these violin shops by representing himself as a violin collector.

      b.   After receiving a violin on a trial-period basis, defendant MENG would keep the violin beyond the trial period, negotiate a purchase price for the violin, and then provide the violin shop with a check or checks for the violin.

      c.   In fact, as defendant MENG knew, the representations that he made were false and fraudulent in that:

          i.   He had no intention of paying for the violins, or alternatively returning the violins, after the trial periods; and

          ii.   He knew that the check he mailed to the violin shop for payment of the violin would be rejected because he did not have sufficient funds in his bank account.

      d.   After fraudulently obtaining the victim violin shop's violin, defendant MENG would often sell the violin, or attempt to sell it.  When selling these violins, defendant MENG fraudulently held himself out as the rightful owner of the violins, despite knowing that he stole them.  Defendant MENG often sold violins he obtained for limited trial periods during the trial period itself.

      e.   When a check bounced because of insufficient funds, defendant MENG would send a new check or set of checks to the violin shop, knowing that these checks would also bounce.  Defendant MENG would eventually stop communicating with the violin shop representative, or tell the violin shop that he mailed the violin

back, but the mail carrier lost it, knowing that he never in fact attempted to mail the violin back, and the mail carrier never in fact had possession of it.

**Violin Shop 1**

11. On or about January 30, 2023, defendant MENG entered into an agreement with Violin Shop 1 for defendant MENG to take the following three items for a 14-day trial period: (1) a 1913 Caressa & Francais violin, Paris, valued at $40,000; (2) a CN Bazin violin bow, stamped "P. Blanchard a Lyon," valued at $12,500; and (3) a Francais Lott violin bow, stamped "Lupot," valued at $7,500.

12. Per the terms of the agreement, defendant MENG agreed to return the three items within 14 days of January 31, 2023, or submit payment for the three items. Defendant MENG did not return the items or submit payment within 14 days of January 31, 2023.

13. On or about January 30, 2023, a representative of Violin Shop 1 shipped the violin and violin bows to defendant MENG.

14. On or about February 1, 2023, defendant MENG sold the 1913 Caressa & Francais violin to Violin Shop 5, located in Los Angeles, California.

15. On or about February 14, 2023, defendant MENG sold the Francais Lott violin bow to Violin Shop 5, located in Los Angeles, California.

16. On or about March 7, 2023, defendant MENG sent a text message to a representative of Violin Shop 1 stating that he sent half of the amount he owed the shop via registered mail that day and would send the remaining amount in approximately three days.

17. On or about March 10, 2023, Violin Shop 1 received a $28,185 check from defendant MENG, from the U.S. Bank 5340 account.

Violin Shop 1 attempted to deposit this check, but the check was returned for insufficient funds.

18. On or about March 20, 2023, defendant MENG sent Violin Shop 1 another check for $58,185, from the U.S. Bank 5340 account. A representative of Violin Shop 1 attempted to deposit this check, but the check was returned for insufficient funds.

19. On or about March 22, 2023, a representative of Violin Shop 1 texted defendant MENG and requested that defendant MENG return the violin and two violin bows.

20. On or about March 22, 2023, defendant MENG shipped a case, and one of the two violin bows from a UPS store in Irvine, California to Violin Shop 1 in San Rafael, California.

21. On or about March 23, 2023, a representative of Violin Shop 1 received defendant MENG's package. The representative texted defendant MENG to inform him that he received only one violin bow and a case, and that the violin and the other bow were missing from the package. Defendant MENG responded, by text, that he "dropped off the UPS package at the front desk."

**Violin Shop 2**

22. On or about August 18, 2020, defendant MENG entered Violin Shop 2 located in Costa Mesa, California, and purchased a violin bow for $1,950. Defendant MENG paid for the bow with a check written from his BofA account 0649. This check cleared.

23. On or about August 21, 2020, defendant MENG returned to Violin Shop 2 and agreed to purchase a case and two violins -- a French, Ch J.B. Colin Mezin violin, and a German, E.H. Roth Guarneri violin -- for $13,202.07.

24. Defendant MENG told the owner of Violin Shop 2 that he wanted to pay with two checks, one for $6,601.07, and one for $6,601. The owner of Violin Shop 2 agreed, and MENG wrote these two checks from his BofA account 0649, and provided the checks to the owner.

25. On or about August 24, 2020, the owner of Violin Shop 2 attempted to deposit these checks, but they both were returned for insufficient funds.

26. The owner of Violin Shop 2 informed defendant MENG that the two checks were returned due to insufficient funds.

27. On or about September 7, 2020, defendant MENG wrote and delivered to the owner of Violin Shop 2 an additional set of checks from his BofA account 0649. The owner of Violin Shop 2 took these checks to a Bank of America location, and a teller informed the owner that there were not sufficient funds in defendant MENG's BofA account 0649 to cover the checks.

**Violin Shop 3**

28. On or about January 12, 2023, defendant MENG contacted Violin Shop 3 located in Upper Falls, Massachusetts, through a website submission and expressed interest in receiving a violin for a trial period.

29. On or about January 17, 2023, an employee at Violin Shop 3 agreed to loan defendant MENG a Gand & Bernardel violin, dated 1870, and valued at $60,000, for a trial period.

30. On or about January 19, 2023, the Violin Shop 3 employee shipped the Gand & Bernardel violin, a C.N. Bazin bow, dated 1905, a Hoyer gold-mounted bow stamped "Leon Picque," and a case to defendant MENG in Irvine, California, via FedEx Overnight.

31. On or about February 8, 2023, defendant MENG agreed, via telephone, to purchase the Gand & Bernardel violin for $50,000.

32. On or about February 23, 2023, an employee at Violin Shop 3 emailed defendant MENG and requested that defendant MENG send him the case, one of the bows he did not intend to purchase, and a check for the Gand & Bernardel violin.

33. On or about February 24, 2023, defendant MENG shipped a package via FedEx from Irvine, California, to Violin Shop 3, which contained the case, one of the two bows, and a check for $51,136 from his U.S. Bank 5340 account. Violin Shop 3 attempted to deposit this check, but it was returned for insufficient funds.

34. On or about March 21, 2023, an employee of Violin Shop 3 emailed defendant MENG and asked him to return all loaned items via FedEx Overnight.

35. On or about March 22, 2023, defendant MENG sent Violin Shop 3 a package via UPS Ground and emailed a UPS Ground receipt to Violin Shop 3.

36. On or about March 29, 2023, an employee of Violin Shop 3 emailed defendant MENG and told him that Violin Shop 3 received his package, but it only included the "Leon Picque" bow and a case. On or about that same day, defendant MENG and an employee of Violin Shop 3 spoke by phone, and defendant MENG misrepresented to the employee that he inadvertently shipped the Gand & Bernardel violin to Amazon.

**Violin Shop 4**

37. On or about January 28, 2023, defendant MENG contacted the owner of Violin Shop 4 located in Alexandria, Virginia, via the

7

shop's website.  Defendant MENG represented himself as a violin player and investor, and expressed interest in a violin.

38.   On or about February 1, 2023, the owner of Violin Shop 4 agreed to lend defendant MENG: (1) a Ventapane violin, valued at approximately $175,000; (2) a Degani violin, valued at approximately $55,000; and (3) three violin bows, valued at approximately $5,000 each: an E.F. Ouchard bow, a Pierre Guillaume bow, and a Thomas Dignan bow.

39.   According to the terms of the trial contracts that applied to these items, if the items were not purchased, all of the items were due back to Violin Shop 4 by February 10, 2023.

40.   On or about February 1, 2023, Violin Shop 4 shipped the violins and the bows to defendant MENG.

41.   On or about February 7, 2023, defendant MENG sold the Degani violin to Violin Shop 5 in Los Angeles, California, even though defendant MENG did not own the violin.  Per defendant MENG's request, the owner of Violin Shop 5 provided defendant MENG with two checks for this transaction: a $2,500 check, and a $13,500 check.

42.   On or about February 7, 2023, defendant MENG cashed the $2,500 check from Violin Shop 5's Chase 7866 account, and deposited the $13,500 check into his U.S. Bank 5324 account.

43.   On or about March 5, 2023, defendant MENG mailed the owner of Violin Shop 4 a check for $235,234 from the U.S. Bank 5340 account for the Ventapane violin, the Degani violin, and two of the three bows.  Violin Shop 4 attempted to deposit this check, and but the check returned for insufficient funds.

44.   Despite requests from representatives of Violin Shop 4 to return the violins and bows, defendant MENG never returned them.

8

C. USE OF INTERSTATE WIRES

45. On or about the following dates, within the Central District of California, and elsewhere, defendant MENG, for the purpose of executing the above-described scheme to defraud, caused the transmission of the following items by means of wire communications in interstate commerce:

| COUNT | DATE | ITEM |
|---|---|---|
| ONE | January 31, 2023 | Interstate email from defendant MENG to Violin Shop 4 wherein defendant MENG requested that Violin Shop 4 send him the Ventapane violin and the Degani violin on a trial basis. |
| TWO | March 2, 2023 | Interstate email from defendant MENG to Violin Shop 3 attaching a copy of a FedEx receipt. |
| THREE | March 22, 2023 | Interstate email from defendant MENG to Violin Shop 3 attaching a copy of a UPS receipt. |
| FOUR | January 26, 2023 | $18,500 check from Violin Shop 5 deposited by defendant MENG into his U.S. Bank 5324 account. |
| FIVE | February 1, 2023 | $5,700 check from Violin Shop 5 deposited by defendant MENG into his U.S. Bank 5324 account. |
| SIX | February 1, 2023 | $2,500 check from Violin Shop 5 cashed by defendant MENG from Violin Shop 5's Chase 7866 account. |
| SEVEN | February 7, 2023 | $2,500 check from Violin Shop 5 cashed by defendant MENG from Violin Shop 5's 7866 account. |
| EIGHT | February 7, 2023 | $13,500 check from Violin Shop 5 deposited by defendant MENG into his U.S. Bank 5324 account. |
| NINE | February 14, 2023 | $2,000 check from Violin Shop 5 cashed by defendant MENG from Violin Shop 5's Chase 7866 account. |

9

COUNT TEN

[18 U.S.C. § 2113(a)]

On or about April 2, 2024, in Orange County, within the Central District of California, defendant MARK MENG, by intimidation, knowingly took, from the person and presence of another, approximately $446 belonging to, and in the care, custody, control, management, and possession of, U.S. Bank, located at 4180 Barranca Parkway, Irvine, California, a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of any of the offenses set forth in this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to such offense;

(b) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party;

//

//

(c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

MARK WILLIAMS
Assistant United States Attorney
Chief, Environmental Crimes and
Consumer Protection Section

LAURA A. ALEXANDER
Assistant United States Attorney
Environmental Crimes and Consumer
Protection Section